UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
|  | ) |  |
| AARON M. JACKSON AND | ) | CASE NO. 05-64536 |
| BRANDI L. JACKSON, | ) |  |
|  | ) | ADV. NO. 06-6082 |
| Debtors. | ) |  |
|  | ) | JUDGE RUSS KENDIG |
| ANNE PIERO SILAGY, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | **MEMORANDUM OPINION** |
|  | ) | **(WRITTEN OPINION)** |
| JAY'S AUTO SALES, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

This matter comes before the court upon a motion for summary judgment by Jay's Auto Sales (hereafter "Defendant"or "Jay's") filed on May 19, 2006. Anne Piero Silagy (hereafter "Plaintiff") filed a response to the motion for summary judgment on June 9, 2006. Defendant filed a reply to Plaintiff's response memorandum on June 14, 2006. For the reasons set for below, the Defendant's motion is denied.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157, and the general order of reference entered in this district on July 16, 1984. This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(F). Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### FACTS & PARTIES' ARGUMENTS

Aaron and Brandi Jackson (hereafter "Debtors") filed a chapter 7 petition on

1

August 4, 2005. On April 25, 2005, prior to the filing of their bankruptcy case, Debtors purchased a 1999 Nissan Maxima from Defendant under a retail installment contract. Debtors took possession of the vehicle on or about the same day, April 25, 2005. On May 18, 2005, a certificate of title was issued to Plaintiff. Defendant recorded and perfected its security interest in the vehicle, through notation of a lien on the title, on May 18, 2005.

The transaction between Debtors and Defendant was a "buy here, pay here" transaction. The seller was both the finance company and the dealer. Debtors executed a note and security agreement with Defendant. Defendant transferred its interest in the vehicle to Debtors and Debtors transferred a portion of their interest to Defendant through the notation of a lien on the title.

Plaintiff filed an adversary proceeding on March 28, 2006, stating that the recording and perfecting of Defendant's lien constitutes a preferential transfer avoidable by Plaintiff pursuant to section 547 and is recoverable pursuant to section 550(a).

In its motion for summary judgment, Defendant first argues that Plaintiff cannot prove the last element set forth in section 547(b)(5) because Defendant would have been the owner of the vehicle had the May 18th certificate not been issued and therefore could not have improved its position by virtue of perfection of its security interest. Defendant argues that, pursuant to Ohio Revised Code § 4505.04(a), it was the owner of the vehicle and thus the certificate of title did not improve, but rather diluted, Defendant's position.

Defendant's second argument in its motion for summary judgment is that the acquisition of the title was contemporaneous with the notation on the certificate of lien. According to Defendant, when the State of Ohio issued the certificate transferring ownership from Defendant to Debtors, Defendant retained a security lien against the vehicle. In its reply brief, Defendant argues that it owned the vehicle on April 25, 2005 and was, at all times, either the owner of the vehicle or a lienholder.

Plaintiff contends the assertion that Debtors had no interest in the vehicle prior to Defendant's recording of lien on the certificate of title is incorrect. She states that Defendant's security interest did not arise at the same instant as the Debtors' ownership. Instead, Plaintiff posits that a purchaser acquires an interest in a vehicle upon taking possession and an enforceable security interest arises when value has been given and debtor possesses rights in the collateral. Thus, Debtors acquired an interest in the property when they executed the retail installment contract on April 25, 2005 and the transfer sought to be avoided is simply the notation of Defendant's lien on the certificate of title. Plaintiff further asserts that Defendant cannot assert the contemporaneous exchange doctrine as a defense because it did not perfect its lien within ten days of the creation of the debt.

2

## DISCUSSION

1.  **Summary Judgment Standard**

    The standard for summary judgment is set forth in Federal Rule of Civil Procedure 56, made applicable through Federal Rule of Bankruptcy Procedure 7056, which provides that:

    > The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

    Fed. R. Civ. P. 56(c). The evidence "must be viewed in the light most favorable" to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a genuine dispute of material fact exists, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2.  **Preferences in General**

    The bankruptcy code discourages preferential transfers in order to ensure a fair distribution of assets among creditors, to prevent prebankruptcy looting of a debtor, and to neutralize debtors' tendency to favor particular creditors. Through section 547, a trustee is empowered to avoid preferential transfers:

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3) made while the debtor was insolvent;

    (4) made --

        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

    (5) that enables such creditor to receive more than such creditor would receive if--

3

>    (A) the case were a case under chapter 7 of this title;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(a). Condensed, a party seeking to prove a preference must demonstrate that the transfer was (1) to benefit a creditor; (2) on account of antecedent debt; (3) made while the debtor was insolvent; (4) made within the applicable preference period; and (5) enabled the creditor to receive a larger share of the estate than the creditor would otherwise receive. *See* In re Carled, Inc., 91 F.3d 811 (6th Cir. 1996) (citing Union Bank v. Wolas, 502 U.S. 151, 155 (1991)).

In accordance with 11 U.S.C. § 547(g), Plaintiff bears "the burden of proving the avoidability of the transfer under subsection (b) of this section." Each element must be proved by a preponderance of the evidence. *See e.g.*, Hunter v. Dupuis (In re Dupuis), 265 B.R. 878 (Bankr. N.D. Ohio 2001). The burden of proving the applicability of a defense under subsection (c) is charged to the transferor/defendant. 11 U.S.C. § 547(g).

### 3. Section 547(b)(5)

In its motion for summary judgment, Defendant contends that Plaintiff cannot prove the fifth element of a preference action. As outlined above, successfully proving section 547(b)(5) requires Plaintiff to demonstrate that the creditor, through the alleged preferential transfer, received more than it would have received in a hypothetical chapter 7 liquidation case in the absence of the transfer. *See* Hunter v. Snap-On Creditor Corp. (In re Fox), 229 B.R. 160 (Bankr. N.D. Ohio 1998). When dealing with unsecured creditors, courts have found that unless unsecured creditors are to receive a one hundred percent distribution from the estate, any payment an unsecured creditor receives during the preference period naturally entitles it to more than it would receive in the hypothetical liquidation. *See* SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Industries, Inc.), 328 B.R. 755 (Bankr. S.D. Ohio 2005) (quoting Whittaker v. Citra Trading Corp. (In re Int'l Diamond Esch. Jewelers, Inc.), 177 B.R. 265, 269 Bankr. S.D. Ohio 1995 (citing Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 464-65 (6th Cir. 1991)). Different rules, however, may apply where a secured creditor is concerned. *See* Kohout v. U.S. Dep't of Treasury (In re Kohout), 236 B.R. 365 (Bankr. N.D. Ohio 1999); In re C-L Cartage Co., Inc., 899 F.2d 1490 (6th Cir. 1990); Belfance v. BancOhio (In re McCormick), 5 B.R. 726 (Bankr. N.D. Ohio 1980). For example, a secured creditor would be entitled to receive a distribution up to the full value of either its claim (fully secured creditors) or the collateral (undersecured creditors) in a chapter 7 liquidation. Id. Consequently, the Defendant's status as secured or unsecured is of particular importance to a section 547(b)(5) analysis.

Jay's denies that it was an unsecured creditor, either before or after the recording of the lien on the title and references its ownership of the vehicle prior to the notation of the lien

4

on the title. This argument, however, confuses two twigs in the "bundle of sticks" that comprise property rights. Ownership and security interests are separate components, although they frequently overlap or intertwine.

As far as ownership, the Sixth Circuit found that "the debtor obtains an ownership interest in the collateral upon its delivery." Whittaker v. Ford Motor Credit Co. (In re Edney), 1995 WL 16883 (6th Cir. 1995) (unpublished). Edney also involved a car purchase, although the purchase in that case was financed by a third-party who did not hold title to the car. The financier argued that it merely "retained" an interest in the vehicle when the lien was recorded, so no transfer occurred. The court concluded that because the financier did not have rights in the car prior to its lien, the only party who could have given it rights was debtor. Since debtor had ownership rights in the car prior to the lien, she effected a transfer of her interest to the financier when the lien was noted on the title. Edney clearly establishes Debtors' ownership interest in the vehicle prior to issuance of the certificate of title and recording of the lien. Two facts distinguish Edney from the case at hand: first, the issue in Edney was whether a transfer occurred, not whether the transfer entitled the creditor to more than it would receive in a chapter 7 liquidation, and, second, the lender never held title to the vehicle.

The court notes the existing morass resulting from often conflicting statutes, Ohio Revised Code §§ 4505 and 1302, involving motor vehicle titles. *See, e.g.,* Saturn of Kings Automall v. Mike Albert Leasing, Inc., 92 Ohio St.3d 513 (2001); Bruce A. Campbell, Ohio Car Buyers, Their Financers, and "Uniformers" Beware: Certificates of Title Control in Ohio, 60 Consum Fin. L.Q. Rep. 216 (2006). The Ohio Supreme Court has determined that Ohio Revised Code § 4504.04(A) controls when there are competing ownership claims. *See* Saturn of Kings Automall, 92 Ohio St.3d at 519. The court finds that ownership was not at issue in this case: Debtors had advanced value and taken possession of the car and were entitled to become the legal owners of the vehicle. Debtors consideration for, and possession of, the vehicle gave them an equitable interest in the vehicle. The certificate of title only memorialized their ownership. Defendant had no option but to obtain issuance of a title to Debtors.

Defendant argues that the fact that it was the owner, pursuant to the certificate of title, until May 18, 2006. This argument ignores Edney and also ignores the fact that Debtors had an enforceable interest in the vehicle. Without Debtors' ownership interest, Debtors could not have granted Defendant a security interest. The court finds that section 547(e)(2) harmonizes the ownership and security interests. By forcing the perfection of the security interest, it also works to effectuate the transfer of legal title. Without this protection, "buy here, pay here" sellers would have little incentive to timely transfer titles to purchasers. The perfection of their security interest, however, gives them the incentive.

The security interest is the focus of the section 547(b)(5) inquiry. Plaintiff argues that the notation of Defendant's lien on the title "transformed Jay's claim from unsecured to

5

secured, thereby enabling Jay's to receive more in this bankruptcy case than it would had the transfer not been made . . . ." Pl's M. Summ. J. 3. The court disagrees. Plaintiff's own brief states that "an enforceable security interest arises when value has been given and the debtor possesses rights in the collateral." Id. (citing Field v. Lebanon Citizens Nat'l Bank (In re Knee), 254 B.R. 710 (Bankr. S.D. Ohio 2000). When the parties executed the purchase documents, those documents included a security agreement. Under Knee, the execution of the documents constituted "value" given by Debtors for their ownership interest. The date on which Debtors took possession of the vehicle gave rise to Defendant's enforceable security interest and governs the ten day perfection period. Since Debtors took possession on April 25, 2005, and perfection of the security interest occurred on May 18, 2005, the perfection was untimely.

Prior to perfection of its lien, Defendant held an unperfected security interest. Had the case been filed on May 17, 2005, trustee would have been able to step in front of Defendant's lien. Thus, perfection of the lien on May 18, 2005 gave Defendant greater rights in the collateral, and thereby entitled it to receive more than it would have been entitled to receive in the absence of perfection. Thus, the trustee can prove the existence of 11 U.S.C. § 547(a)(5) and Defendant's motion for summary judgment fails on this issue.

### 4. 547(c)(1): Contemporaneous exchange defense

Defendant alternatively argues that, upon proof of a preferential transfer by Plaintiff, it is protected under 11 U.S.C. § 547(c)(1). That provision states:

> (c) The trustee may not avoid under this section a transfer--
>
> (1) to the extent the transfer was--
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).

Three elements must be satisfied for Defendant to be able to utilize the contemporaneous exchange doctrine: "(1) both debtor and creditor must intend the transfer to be a contemporaneous exchange; (2) the exchange must, in fact, be contemporaneous; and (3) the exchange must be for new value." In re Knee, 254 B.R. at 714 (quoting Stevenson v. Leisure Guide of America, Inc., 202 F.3d 834, 837 (6th Cir. 2000)).

Defendant, however, is not able to avail itself of this defense if perfection of its

6

security interest occurred more than ten days after the security interest arose. Perfection outside the ten day window is *per se* not a contemporaneous exchange: 'the law is well settled in this Circuit that perfection of a security interest in an automobile more than ten days after the debt was created cannot come within the § 547(c)(1) exception.' Baumgart v. Farmers Nat'l Bank of Canfield (In re Lopez), 265 B.R. 570, 573 (Bankr. N.D. Ohio 2001) (citing Bank One, Dayton, N.A. v. Bavely (In re Phillips), 103 B.R. 893, 895 (Bankr. S.D. Ohio 1989)). Defendant is clearly not protected by the contemporaneous exchange for new value defense set forth at 11 U.S.C. § 547(c)(1).

The question in Defendant's motion for summary judgment is whether the transfer, namely the perfection of the lien, entitled Jay's to more than it would have received in a Chapter 7 liquidation case. The security interest was perfected on May 18, 2005, the date the lien was recorded. Prior to that date, Defendant held an unperfected security interest which the trustee could have "trumped" through the exercise of her strong-arm powers. Proper perfection, however, resulted in Defendant relegating the trustee to a junior interest in the vehicle. Thus, the perfection of the security interest was a transfer entitling Defendant to a more superior position than it would have received if the interest had not been perfected. Defendant has failed to demonstrate that plaintiff cannot prove the fifth element of a preference action.

The question becomes whether Defendant, which had sold and financed the car and was under a legal obligation to deliver a title, should be able to use conflicting language in two statutes to delay fulfilling its duty and not suffer the consequences incurred by other lenders. Defendant's ownership rights had ended, but Defendant had not acted with sufficiently deliberate speed to provide Debtors what they paid for and to provide notice to the world.

Since perfection of the security interest occurred more than ten days following the granting of the security interest, the contemporaneous exchange defense of 11 U.S.C. § 547(c)(1) is not available as a matter of law. Consequently, Defendant cannot avail itself of the contemporaneous exchange for new value defense.

A separate order shall issue forthwith.

/s/ Russ Kendig    OCT 23 2006
**Judge Russ Kendig**
**U.S. Bankruptcy Judge**

7

## Service List

Anne Piero Silagy
220 Market Ave. South
Suite 300
Canton, OH 44702

Bruce Schrader
John Rutter
Roetzel & Andress, LPA
222 S. Main Street
Akron, OH 44308

Patrick J. Keating
Buckingham, Doolittle & Burroughs LLP
50 S. Main Street
P.O. Box 1500
Akron, OH 44309